Wagner, J.) Present — Simons, J. P., Callahan, Denman, Moule and Schnepp, JJ.

■ CHARLES RITTER, Appellant, v ROCHESTER GENERAL HOSPITAL, Defendant; ETHAN L. WELCH, Respondent, and ETHICON, INC., Appellant. (Appeal No. 2.) — Motion to dismiss appeal denied. Judgment unanimously affirmed, without costs. (Appeals from judgment of Supreme Court, Monroe County, Boomer, J. — medical malpractice.) Present — Simons, J. P., Callahan, Denman, Moule and Schnepp, JJ.

■ CHARLES RITTER, Plaintiff, v ROCHESTER GENERAL HOSPITAL, Respondent; ETHAN L. WELCH, Defendant, and ETHICON, INC., Appellant. (Appeal No. 3.) — Motion to dismiss appeal denied. Judgment unanimously affirmed, without costs. (Appeal from judgment of Supreme Court, Monroe County, Boomer, J. — medical malpractice.) Present — Simons, J. P., Callahan, Denman, Moule and Schnepp, JJ.

■ In the Matter of MARINE MIDLAND PROPERTIES CORPORATION, Appellant, v ROBERT Z. SROGI, as Commissioner of Assessment of the City of Syracuse, Respondent. — Judgment unanimously modified, on the law and facts, and, as modified, affirmed, with costs, in accordance with the following memorandum: We find sufficient evidence in the record to warrant the trial court's finding that the recent sale of the tax premises for $825,000 was not conclusive on the issue of value. The evidence established that the bank was in a distressed financial condition, that it made a considered judgment to constrict and then to eliminate its operations at this and several other sites throughout the City of Syracuse and the State and that the sale of the building in 1979 was precipitated by those management decisions. Moreover, the lower level of business activity which brought about petitioner's decision was due to transient economic factors, many of them personal to the bank, which should not affect the value of the real estate for tax purposes, and not due to a change in the economic level, which would (see, generally, *Grant Co. v Srogi*, 71 AD2d 457, 464-465, affd 52 NY2d 496). The court erred, however, in capitalizing the value of the property when it used the actual rents paid by the tenant to petitioner, a related corporation. This actual rent was relied on by the city's appraiser exclusively and included not only the expenses one would expect in net leases, such as taxes, insurance, etc., but also a substantial monthly sum which included amounts for principal and interest sufficient to amortize the cost of the property. This sum, supposedly representing rent, had no relation to market rental, but was a computation of the cost of carrying the property. The city's appraiser tried to show that the sum paid under the lease represented the fair market rental value for use of the building, but his comparables failed to do so and had no probative value. Thus, the only competent evidence of the rental value in the record was the economic rent supplied by petitioner's expert. Since the accuracy of these gross rent figures was not seriously challenged by the city, we are compelled to accept them. Nor were the expenses deducted from gross income open to attack, except for renovation expenses for the second floor, since they apparently represented actual expenses. Insofar as the renovation expenses for the second floor are concerned, we find them excessive considering that this was a new building with paneled interior walls and carpeted floors. Thus, we have adjusted the annual expenses by deleting the amount included in petitioner's appraisal for renovation and substituting instead the sum of $2,500 representing a cost of $25,000 amortized over 10 years. Accordingly, for capitalization purposes, net income is adjusted to $117,651 for the years 1975, 1976 and 1977 and $117,714 for the years 1978 and 1979. Finally, we find the capitalization rates used by petitioner's expert