**423 SOUTH SALINA STREET, INC., Appellant,**

v.

**The CITY OF SYRACUSE, a Municipal Corporation, Robert Srogi, Individually and as Commissioner of Assessment of the City of Syracuse, Frank L. Canino, Individually and as Commissioner of Finance of the City of Syracuse, Lee Alexander, Individually and as Mayor of the City of Syracuse, and Jacob Benderson, Individually and as Chairman, Assessment Board of Review of the City of Syracuse, Appellees.**

No. 183, Docket 83–7432.

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1983.

Decided Dec. 14, 1983.

James S. Grossman, Rochester, N.Y. (Ruth Kennedy-Daise, Mousaw, Vigdor, Reeves, Heilbronner & Kroll, Rochester, N.Y., of counsel), for appellant.

James L. Gelormini, First Asst. Corp. Counsel, Syracuse, N.Y. (David M. Garber, Corporation Counsel, Syracuse, N.Y., of counsel), for appellees City of Syracuse, Srogi, Canino, and Alexander.

Eric S. Benderson, Syracuse, N.Y. (Jacob Benderson, Syracuse, N.Y., Judith Kunzman Benderson, Potomac, Md., of counsel), for appellee Benderson.

Before OAKES and KEARSE, Circuit Judges, and WYZANSKI, District Judge.*

PER CURIAM:

According to the New York courts, the City of Syracuse has engaged in "an aggravated pattern of misuse of the taxing power"[1] by overassessing property year after year despite court rulings that such overassessments were unlawful. This "long and aggravated pattern of conduct"[2] has enabled the City to have use of the overassessed amounts at the expense of taxpayers who are left to fight prolonged administrative and judicial battles, and who recover a

---

\* Of the District of Massachusetts, sitting by designation.

1. *W.T. Grant Co. v. Srogi,* 52 N.Y.2d 496, 518–19, 420 N.E.2d 953, 963, 438 N.Y.S.2d 761, 772 (1981) (denying injunction to present appellant on basis that it lacks equitable standing to

assert aggravated pattern of tax abuse against its predecessor in title).

2. *W.T. Grant Co. v. Srogi,* 71 A.D.2d 457, 574, 423 N.Y.S.2d 324, 336 (1979), *aff'd in relevant part,* 52 N.Y.2d 496, 420 N.E.2d 953, 438 N.Y.S.2d 761 (1981).

mere 3% surcharge upon proving overassessments.[3]

Appellant is a purchaser of one such overassessed piece of property, having bought it at a low price with the understanding that the outstanding tax liability would be assumed. Appellant did not, however, pay that liability, nor did it pay the taxes for the following three years. As a result, the City seized the property and ultimately "bought" it for the amount of unpaid taxes plus interest.

■ Appellant brought a federal civil rights suit challenging these actions. It alleged violations of 42 U.S.C. § 1983 (Supp.1981) for deprivation of its property without due process or just compensation and without equal protection of the laws. In addition, it made claims under 42 U.S.C. §§ 1985(3) and 1986 (1976 & Supp.1981), alleging that the City and some of its major officials conspired to violate appellant's civil rights and failed to prevent the operation of such a conspiracy when they had the power to do so. The United States District Court for the Northern District of New York, Howard G. Munson, Chief Judge, dismissed the complaint in a well-reasoned opinion. The court held that appellant's Section 1983 claim was barred by *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (principles of comity bar award of damages in federal court under Section 1983 for alleged unconstitutional administration of state tax assessments), and that the allegations of conspiracy were " 'vague,' 'conclusory,' and 'general,' " and thus insufficient to state claims under Sections 1985(3) and 1986 as interpreted by this circuit.[4]

We agree fully with the district court's treatment of appellant's Section 1983 claims, in particular with its analysis of *McNary* and of the adequacy of appellant's remedies under New York law. 566 F.Supp. at 488–93. Thus, with respect to these claims, we affirm on the opinion below.

■ We also affirm the dismissal of appellant's claims under Section 1985(3), but we do so on a ground different from that relied on by the district court. *United Brotherhood of Carpenters and Joiners v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 3353, 77 L.Ed.2d 1049 (1983), decided since the decision below was handed down, held quite explicitly that Section 1985(3) does not "reach conspiracies motivated by bias towards others on account of their *economic* views, status, or activities." *Id.* at 3360 (emphasis in original) (nonunion construction company and employees had no action under Section 1985(3) against a regional trade council, twenty-five local unions, and various individuals for damages occurring from assault on employees and destruction of construction equipment at job site). If anything, this case more obviously involves an economic class than *United Brotherhood.* In *United Brotherhood* the victims were attacked because of their membership in a specific class of nonunion employers/employees, while so far as appears here, if a class of taxpayers is involved at all,[5] it is

---

**3.** N.Y.Gen.Mun. Law § 3–a(1) (McKinney 1977). The New York legislature has subsequently increased the interest rate to 9% as of July 22, 1982. 1982 N.Y.Laws ch. 681 § 1.

**4.** *423 South Salina St. v. City of Syracuse,* 566 F.Supp. 484, 493 (N.D.N.Y.1983) (citing *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977)).

**5.** Paragraph 55 of the complaint makes allegations as to other downtown property owners. The Appellate Division did suggest that downtown property owners were affected as a class:

It is not difficult to sort out the considerations at work here. The City's constitutional debt limit and the amount of important financial aid it receives are computed by the total assessed value of the real property in the City. An important segment of any municipal assessment roll is the commercial properties of its downtown shopping area. These properties not only contribute high values to the assessment roll, but downtown property owners represent a relatively innocuous part of the City constituency. Thus, there is much to win and little to risk by keeping downtown assessments high.

*W.T. Grant Co. v. Srogi,* 71 A.D.2d at 474, 423 N.Y.S.2d at 335, *aff'd in relevant part,* 52 N.Y.2d 496, 420 N.E.2d 953, 438 N.Y.S.2d 761 (1981). But appellant also suggests that the City especially wanted its property because it is a key to a large development planned by the

more purely an economic class, i.e., downtown property holders. Because the appellant has not made out a claim of conspiracy within the meaning of Section 1985(3), it follows that his claim against the appellees under Section 1986, for failure to prevent such conspiracy, must also be dismissed. 42 U.S.C. § 1986 (1976); *Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981); *Slegeski v. Ilg,* 395 F.Supp. 1253, 1255–56 (D.Conn.1975).

Judgment affirmed.

City, an allegation somewhat inconsistent with the claim of a conspiracy against the class of

downtown property holders.