OPINION OF THE COURT
 

 Titone, J.
 

 At issue in this appeal is whether the State of New York, as a property owner, may withhold payment of its local
 
 *677
 
 property taxes while it is challenging the amount of the assessment. Having found no indication of a legislative intent to exempt the State from the rule applicable to other taxpayers, we hold that, notwithstanding the pendency of a dispute over the amount, the State must pay its local property taxes when they are due. Further, we conclude that mandamus lies to enforce that obligation.
 

 The real property at issue in this appeal encompasses some 380 parcels located within the Town of Northampton in Fulton County. These parcels were acquired in the name of the State for use by the Hudson River-Black River Regulating District (the District), a public corporation charged with constructing, maintaining and operating reservoirs
 
 (see,
 
 ECL 15-2103, 15-2111 [8]). Such real property is taxable "in the same manner as state lands subject to taxation pursuant to title 2 of article 5 of the Real Property Tax Law” (ECL 15-2115). The taxes are to be paid by the District out of its "general fund,” with the disbursement countersigned by the State Comptroller (ECL 15-2129 [9]).
 

 In 1986 and 1987, the District’s local real property tax assessment increased more than twofold. Following a review by the State Board of Equalization and Assessment (SBEA)
 
 (see,
 
 RPTL 542), the District and the SBEA brought timely tax certiorari proceedings pursuant to article 7 of the Real Property Tax Law, arguing that the assessments were excessive and disproportionate. Additionally, the District declined to pay the disputed property taxes, claiming that it was entitled to withhold payment while the certiorari proceedings were pending.
 
 [1]
 

 Petitioner Fulton County commenced the present article 78 proceeding for relief in the nature of a writ of mandamus. Petitioner alleged that the District had a legal duty to pay its taxes and that it was aggrieved by the District’s continuing breach of that duty because, by operation of law, it was obliged to advance the uncollected funds to the town and school districts that had imposed the tax
 
 (see,
 
 NY Const, art XVI, § 2). Respondents opposed petitioner’s request for relief, arguing that petitioner had no clear statutory right to payment of the disputed taxes and that, accordingly, mandamus did not lie. Specifically, respondents took the position that, in light of the important policy considerations and the statutes
 
 *678
 
 insulating the State from some of the conventional remedies for nonpayment of local taxes, the State and its land-holding agencies should also be permitted to withhold payment of any disputed assessment until the dispute is finally resolved.
 

 The Supreme Court rejected respondents’ arguments. Finding no authority for exempting the State and, by logical extension, the District from the general rule that a taxpayer who disputes an assessment must nonetheless pay the tax, the court issued an order requiring the District to pay the challenged taxes and the Comptroller to countersign the disbursements, subject to any other "valid objections” not related to the amount of the assessments. The Appellate Division affirmed, and respondents have taken a further appeal by leave of this Court.
 

 Mandamus is often characterized as an "extraordinary remedy” that is available only in limited circumstances
 
 (see, e.g., Klostermann v Cuomo,
 
 61 NY2d 525, 537). Traditionally, the writ of mandamus is the relief invoked when a party seeks to compel performance by a governmental agency of a duty enjoined by law
 
 (see, e.g., Matter of Hamptons Hosp. & Med. Center v Moore,
 
 52 NY2d 88, 96). A party seeking relief in the nature of mandamus must show a "clear legal right”, to that relief
 
 (see, e.g., Matter of Legal Aid Socy. v Scheinman,
 
 53 NY2d 12, 16). However, the availability of mandamus to compel "depends not on the applicant’s substantive entitlement to prevail, but on the nature of the duty sought to be commanded — i.e., mandatory, nondiscretionary action.”
 
 (Matter of Hamptons Hosp. & Med. Center v Moore, supra,
 
 at 97.)
 

 Here, the duty of respondent District is established by ECL 15-2115, which provides that land owned or acquired by the State for river regulating districts "shall be assessed and taxed in the same manner as state lands subject to taxation” and that the assessments
 
 "shall
 
 be paid by the river regulating district” (emphasis supplied). Thus, the only remaining question is whether that duty "enjoined by law” is suspended during the pendency of the District’s judicial challenge to the amount of the assessment.
 

 The general rule on this question is not disputed. Section 704 (3) of the Real Property Tax Law provides that the commencement of a tax certiorari proceeding does not stay the collection of taxes. Further, as this Court stated in
 
 Grant Co. v Srogi
 
 (52 NY2d 496, 515), "[i]t is well established that one challenging a tax assessment must continue to pay his
 
 *679
 
 taxes”. The rule rests on a recognition that "taxes are the lifeblood of government, and their prompt and certain availability an imperious need.”
 
 (Bull v United States,
 
 295 US 247, 259.) For that reason, "a municipality ordinarily should not be denied or delayed in the enforcement of its right to collect the revenues upon which its very existence and the general welfare depends.”
 
 (Grant Co. v Srogi, supra,
 
 at 516.)
 
 [2]
 

 Respondents do not take issue with these policies as they apply to other tax-paying property owners. Rather, respondents argue that a special exception should be made in cases where the State
 
 [3]
 
 is the delinquent taxpayer. To support this position, they rely, in part, on RPTL 1004 (2), which insulates the State from having to pay interest and penalties for delinquent taxes, and RPTL 1174, which protects State-owned lands from tax foreclosure proceedings. These statutes, respondents contend, demonstrate an over-all legislative intention to afford the State preferential treatment in the enforcement of its obligations as a local taxpayer. In light of this perceived intention, respondents ask this Court to follow the Legislature’s over-all plan by exempting the State from the
 
 Grant Co.
 
 rule and precluding the use of mandamus as a remedy for the State’s refusal to pay local taxes while it challenges its assessment.
 

 However, the legislative design may not be stretched so far. RPTL 1174 is merely the most recent codification of the long-standing statutorily based rule that "there shall be no sale for taxes or assessments of lands belonging to the state”
 
 (Matter of People [Melrose Ave.],
 
 234 NY 48, 54). Similarly, RPTL 1004 (2) is simply an expression of the general principle, recognized in many other contexts, that penalties in excess of the sums due or needed to compensate "are not
 
 *680
 
 sensibly assessed against the governmental entity itself’
 
 (City of Newport v Fact Concerts,
 
 453 US 247, 267), since, in such cases, " 'the burden of punishment [would be borne by] the taxpayers and citizens’ ”
 
 (Sharapata v Town of lslip,
 
 56 NY2d 332, 338;
 
 see,
 
 Public Officers Law § 17 [3] [a], [c]; § 18 [4] [b], [c]; General Municipal Law § 50-k;
 
 see also,
 
 1987 Opns St Comp No. 87-20 [penalties imposed for late payment of real property tax are punitive in nature]). Neither statute can be read as reflecting a broad legislative intention to exempt the State from all of the rules applicable to other taxpayers or all of the enforcement mechanisms potentially available against it. Indeed, in light of these clear legislative provisions insulating the State from two
 
 specific
 
 enforcement remedies, the more plausible inference would seem to be that no further protection for the State was intended.
 

 Nor are we persuaded by respondents’ contention that a legislative intent to shield them from mandamus may be inferred by comparing the RPTL provisions applicable to the State with those applicable to municipalities. Section 995 of the RPTL forbids tax foreclosures on real property owned by municipal corporations and provides, in addition, that "[i]f [the] tax or special assessment remains unpaid for more than sixty days after demand therefor * * * payment may be enforced by a proceeding brought pursuant to article [78].” Relying on the absence of an analogous provision for enforcement applicable to State-owned property, respondents ask us to infer a legislative intent to place the State beyond the reach of article 78 mandamus proceedings brought by the local tax collector. The statute does not, however, support such a conclusion.
 

 RPTL 995 is derived from former section 4-b of the Tax Law, which was adopted in 1958 at the request of the New York State County Officers Association (L 1958, ch 890, § 1;
 
 see,
 
 Bill Jacket, Mem to Governor from State Bd of Equalization and Assessment, Apr. 21, 1958 [SBEA Mem]).
 
 [4]
 
 The statute was enacted in recognition that local authorities sometimes "los[e] trac[k] of’ municipally owned real property and, consequently, fail to pay the required taxes, leading to unnecessary tax foreclosures (L 1958, ch 890, Bill Jacket, Letter to Gover
 
 *681
 
 nor from County Officers Assn, Apr. 8, 1958 [County Officers Assn Letter];
 
 see, id.,
 
 Mem to Governor’s Counsel from State Dept of Audit and Control, Apr. 13, 1958 [Dept of Audit and Control Mem]). To eliminate this hardship, the remedy of foreclosure proceedings against municipally owned property was abolished and the right to bring a proceeding under article 78 was substituted
 
 (id.,
 
 County Officers Assn Letter;
 
 id.,
 
 Dept of Audit and Control Mem;
 
 id.,
 
 SBEA Mem).
 

 There is nothing in the history of this particularized statute, however, to suggest that, as a matter of law or logic, mandamus was generally unavailable as a means of enforcing a governmental entity’s real property tax obligations. Significantly, neither this Court nor any other appellate court in this State had addressed the question at the time Tax Law former § 4-b was enacted. Indeed, it appears that the question simply had not previously arisen, quite possibly because it had generally been the practice of the State to continue paying its local taxes while challenging the assessments
 
 (see,
 
 Sponsors’ Mem in support of A 3768, "An act to amend the environmental conservation law, in relation to payment of disputed taxes by river regulating districts” [bill passed by Senate and Assembly but disapproved by the Governor, July 28, 1989]),
 
 [5]
 
 and the remedy of foreclosure as against a municipality was available where its local tax obligations went unsatisfied. In any event, RPTL 995’s inclusion of a specific reference to the "substitute” remedy of article 78 cannot be construed as an indication of the Legislature’s intention to preclude the use of that remedy in analogous situations such as this one.
 

 Finally, we find unpersuasive respondents’ contention that the relevant policy considerations compel a ruling in its favor. First, the respondents’ claim that dire consequences will ensue if the State is obliged to pay upon the "mere assessment of taxes” is based upon an implausible scenario in which localities routinely fix exorbitant assessments on State lands and
 
 *682
 
 then spend the funds in a way that precludes their subsequent recoupment. This catastrophic prediction depends for its validity upon assumptions that attribute a degree of irresponsibility to local taxing entities that we cannot accept. Second, respondents’ policy argument, which stresses the need to protect the State treasury, falls short because it fails to recognize the countervailing need to ensure continuity and predictability in the funding base available for local governmental services. This need, which was deemed sufficient to defeat the individual citizen-taxpayer’s claim in
 
 Grant Co. v Srogi
 
 (52 NY2d 496, 515-516,
 
 supra),
 
 is equally weighty when, as here, it is the State that is the taxpayer. Indeed, the balance of equities may even tilt more heavily in favor of local government’s taxing power when the State is the taxpayer, since the State is generally in a better position than an individual taxpayer to absorb a temporary overpayment pending judicial correction.
 
 [6]
 

 Accordingly, we hold that, like citizen-taxpayers, the State must timely pay its local real property taxes as assessed, notwithstanding the pendency of an article 7 tax certiorari proceeding
 
 (see,
 
 RPTL art 7), at least in the absence of special circumstances not present here. Since ECL 15-2115 permits localities to tax lands acquired for river regulating districts "in the same manner as state lands” and requires the districts to pay such assessments, respondent District has a duty enjoined by law which may be enforced by a writ of mandamus.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . According to the parties, the tax certiorari proceedings were still pending at the time that the briefs in this appeal were filed.
 

 [2]
 

 . We have recognized a narrow exception in circumstances where the taxpayer threatened by the imminent loss of its property because of "the imposition of an intentionally excessive tax” seeks judicial protection in the form of injunctive relief
 
 (Grant Co. v Srogi,
 
 52 NY2d 496, 517;
 
 see also, 423 S. Salina St. v City of Syracuse,
 
 68 NY2d 474, 482-483). However, that exception has no application here because there has been no showing of intentional abuse and, in any event, there can be no threat of an imminent loss of this State-owned property
 
 (see,
 
 RPTL 1174).
 

 [3]
 

 . Because property acquired by the State for use by a river regulating district is subject to taxation "in the same manner as state lands” (ECL 15-2115) and respondents have not differentiated between the State and the District for purposes of this appeal, our discussion refers to the
 
 State’s
 
 local tax obligations, even though it is the District that is ultimately responsible for paying the disputed assessment.
 

 [4]
 

 . The provision was omitted from the Real Property Tax Law when that statute was initially enacted as an integrated code in 1958 (L 1958, ch 959). The provision was restored one year later, however, as part of a package of technical corrections (L 1959, ch 733, § 23; see, Bill Jacket, Letter of Assn of Bar of City of NY, Apr. 20, 1959).
 

 [5]
 

 . In the summer of 1989, both houses of the Legislature passed a bill that would have amended ECL 15-2115 to require river regulating districts to "make all timely payments of taxes at the amount assessed” pending disposition of any outstanding tax certiorari proceedings (A 3768, S 2547). The bill, which was prompted by the present controversy, was ultimately disapproved by the Governor, who stated, in passing, that "[a]t present * * * there is nothing in law to require the payment of even the undisputed amount of taxes owed by the [river regulating district]” during the pendency of a proceeding (Governor’s Disapproval Mem No. 23, July 25, 1989). However, the Governor’s construction is not binding on this Court.
 

 [6]
 

 . In this connection, it is noteworthy that because the county government has had to advance the funds that respondent District refuses to pay, the net effect of respondents’ position has been to shift the risks and burdens of paying the assessment from the State to the county.