OPINION OF THE COURT
Alice Schlesinger, J.
Petitioner moves for injunctive relief to prevent the shipping, delivery, sale or purchase of apparel on the grounds that this apparel was produced in violation of articles 6 and 19 of the Labor Law. Respondent 14 West Garment Factory Corp., Mayer Lati (14 West) opposes the motion and moves to dismiss the petition. Respondents Ding and Mag Fashion, Inc., Yu Ding Zheng, and Lu-Man Luo, also known as Maggie Lou (Ding and Mag), are in default.
On March 3, 1999 this court granted petitioner Eliot Spitzer, Attorney General of the State of New York, a temporary restraining order pursuant to CPLR 6301 and 6313 against the respondents, 14 West and Ding and Mag restraining the shipping, delivery, sale or purchase of such goods alleged to have been produced in violation of articles 6 and 19 of the Labor Law.
In January of 1999, the New York State Department of Labor Industry Task Force (AITF) received complaints from former *148 employees of Ding and Mag that they had not received the agreed-upon piece price for their work as apparel sewers.
In this State it is illegal to ship, deliver, sell or purchase goods produced in violation of article 6 (payment of wages) and article 19 (Minimum Wage Act) of the Labor Law. Such goods are deemed to be “hot goods” and section 345 (10) (a) of the Labor Law makes it illegal to sell them.
After an investigation, petitioner Eliot Spitzer, Attorney General of the State of New York, commenced this special proceeding to enjoin respondents from shipping, delivering, selling or purchasing “hot goods” produced unlawfully. On March 3, 1999 the court granted the State a temporary restraining order. Subsequently, 14 West filed papers opposing injunctive relief and cross-moved to dismiss the petition. The remaining respondents, as noted earlier, are in default.
In response to the complaints of the former employees, the AITF visited respondent 14 West’s factory in Brooklyn on January 25, 1999 to determine whether the goods were there. AITF Investigator Richard Kroona found that most of the clothing matching the label numbers and styles manufactured by Ding and Mag employees was located at the factory. Subsequent to the discovery of these goods allegedly produced illegally, the AITF notified 14 West via facsimile on January 27, 1999 that pursuant to Labor Law § 345 (10) (a) it was unlawful for 14 West to ship, deliver or sell them as the AITF had concluded that the goods were manufactured in violation of articles 6 and 19.
In addition, the AITF notified 14 West that they could not sell, deliver or ship merchandise that the employees of Ding and Mag had worked on during the period between October 1, 1998 and January 15, 1999 until the wage nonpayment or underpayment was cured. Finally, on February 5, 1999 the AITF again sent 14 West a letter restating what it had said in the first letter.
The State asserts that over a four-month period, approximately 22 Ding and Mag employees produced garments for 14 West for which they should have received $18,500 in wages but never did. The petitioner has provided the following pieces of evidence to support the proposition that the employees of respondent Ding and Mag were not compensated in accordance with article 6 of the Labor Law nor were they paid the minimum wage mandated by article 19 for the work done sewing the apparel sought to be restrained pursuant to section 345 (10) (c):
*149 • Affidavit of Kam-Piu Chan, Labor Standards Investigator for AITF, extensively detailing his findings that at least $18,500 worth of payments had not been made to Ding and Mag and, in turn, to their employees who constructed the garments.
• Affidavit of Ding and Mag employee Li Yun Zhang Chen swearing that she was not compensated for her work on the garments in question.
• Affidavit of Ding and Mag employee Wen Xin Zheng swearing that she was not compensated for her work on the garments in question.
• Affidavit of Ding and Mag employee Jin Xian Chen swearing that she was not compensated for her work on the garments in question.
• Affidavit of Ding and Mag employee Bi Xia Zhou swearing that she was not compensated for her work on the garments in question.
14 West contends that Ding and Mag was paid in excess of $45,000 for the goods. Further, it offers the affidavit of Joseph Lati, the business manager of the company, to refute the petitioner’s claims that 14 West had notice that the goods were produced in violation of law. Mr. Lati contends that although the petitioner faxed notice to 14 West on January 25, 1999, he did not receive such notice until February 2, 1999 because his office was closed for the Jewish Sabbath. 14 West does not offer any other evidence to rebut the petitioner’s claim that the goods were produced in violation of article 6 or 19.
The crux of respondent’s motion to dismiss the Attorney General’s petition is that because the respondent did not know at the time of contracting, manufacture or purchase of the goods that such violations had taken place, then the respondents should not be held liable under the statute. Although not relevant to the request for an injunction, Ding and Mag has submitted an affidavit stating that 14 West did not pay for at least $8,000 worth of goods. 14 West denies that Ding and Mag was not fully compensated for the garments.
Labor Law § 345 (10) (a) provides that “any manufacturer or contractor in the apparel industry who ships, delivers or sells any apparel or sections of apparel; who knew or should have known that such goods were produced in violation of article six or nineteen of this chapter, shall be deemed to have violated this article.”
*150 Article 6 of the Labor Law (§ 190 et seq.) requires the payment of wages for work. Section 190 defines wages as “the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis”.
Article 19 of the Labor Law is the Minimum Wage Act. The minimum wage in effect at the time of the commencement of this action was $4.25 per hour.
Labor Law § 345 (10) (b) states in relevant part that: “Any retailer who sells any apparel or sections of apparel, who knew or should have known that such goods were produced in violation of article six and nineteen of this chapter, shall be deemed to have violated this article. Except that no violation of this article shall be deemed to have occurred if the retailer acquired the apparel without notice from the commissioner of any violations of article six or nineteen of this chapter and with the written or electronically transmitted assurance of such manufacturer or contractor, given before or after production”.
Labor Law § 345 (10) (c) grants jurisdiction to the Supreme Court, upon petition by the Attorney General, to: “[Rjestrain the shipping, delivery, sale or purchase by any manufacturer, contractor or retailer of apparel or sections of apparel upon a showing that such apparel or sections of apparel were, during the previous one hundred and eighty days, produced in violation of article six or nineteen of this chapter or sold in violation of paragraph (a) or (b) of this subdivision.”
Respondent argues that the exception provided in section 345 (10) (b) for retailers, who acquired such apparel without notice by the Commissioner that the apparel was unlawful, should apply to them as well. 14 West urges that the fact that the Legislature provided an express exemption from “hot goods” liability to retailers who obtain apparel in good faith means that a similar standard should be read into the provisions concerning contractors and manufacturers. 14 West would have the court read the statute to extend the stricter knowledge requirement provided in section 345 (10) (b) to apply to violations committed by contractors and manufacturers under section 345 (10) (a) and (c).
I choose not to do so. The “hot goods” law contains no requirement that a manufacturer know that apparel was illegally manufactured at the time the garments were produced. Labor Law § 345 (10) (c) requires that, in order for an injunction to be validly issued, the garments be produced in violation of article 6 or 19 or that the goods were sold in violation of section 345 (10) (a).
*151 The respondent is strictly liable under section 345 (10) (c) because, based on the evidence submitted by petitioner and not disputed by respondent, the goods were produced illegally. The respondent’s reliance on section 345 (10) (b) is misguided. Section 345 (10) (b) relieves retailers of liability when they sell “hot goods” upon a showing by the retailer that it acquired the apparel without notice from the Commissioner of Labor that the goods were produced in violation of law and upon a showing that the retailer had obtained the goods with a written assurance from the manufacturer or contractor that the goods were produced in compliance with applicable law. The exception expressly states that it applies to retailers. No mention is made of an exemption for contractors or manufacturers.
The respondent is correct that it is a basic rule of statutory construction that all parts of a statute are to be read as a whole and that all parts of an act are to be read together to determine the legislative intent. (McKinney’s Cons Laws of NY, Book 1, Statutes ’§ 97.) However, “where a statute is framed in language so plain as to make an explanation superfluous, one will not be attempted”. (McKinney’s Cons Laws of NY, Book 1, Statutes § 71, citing 2525 E. Ave. v Town of Brighton, 33 Misc 2d 1029, affd 17 AD2d 908 [4th Dept 1962].) Here, the intent of the Legislature is clear, no exception was provided for manufacturers or contractors. Under these circumstances, neither should the court create one.
The “hot goods” law is a remedial statute enacted to combat the underpayment and nonpayment of poor laborers. (Governor’s Program Bill Mem No. 113, 1996 NY Legis Ann, at 194.) Exemptions for a retailer acting in good faith and in compliance with the law makes sense because they have little, if anything at all, to do with the workers who construct the garments. However, relieving the contractors or manufacturers of liability does not make sense. Manufacturers and contractors are more closely involved in the compensation of these laborers and therefore they are in a better position to ensure compliance with the Labor Law.
The respondent is also liable under section 345 (10) (a). This section requires that a manufacturer or contractor have knowledge that the goods were produced unlawfully before an injunction can be issued. While 14 West claims to have been notified by the AITF after a good-faith purchase had already been made, the AITF afforded the respondent an opportunity to remedy the underpayment which would then make the goods legal. Therefore, 14 West knew in early 1999 that the goods *152 were produced unlawfully yet chose not to remedy the situation by correcting the nonpayment of the workers themselves or by informing Ding and Mag that this needed to be done. Under such circumstances they cannot be permitted to sell the goods for profit.
In determining whether to grant a preliminary injunction, the movant must demonstrate (1) likelihood of success on the merits; (2) irreparable injury absent preliminary relief; and (3) a balance of the equities in their favor. (Grant Co. v Srogi, 52 NY2d 496.)
Here, the petitioner has demonstrated that more than likely it will prevail on the merits and that the remedial nature of the “hot goods” law and the deterrent effect that enforcing it serves weighs heavily in favor of granting the relief sought. The respondent has offered little to refute the petitioner’s claims. The second and third factors to be considered in granting injunctive relief merge in this , context. The freezing of these goods satisfies the irreparable injury and balancing of the equities factors. The practical effect of this injunction is to protect laborers from further mistreatment and to ensure their compensation for these goods by demanding payment before the injunction could be lifted. One way to insure that these workers and others will be compensated is to prevent the manufacturers from profiting from their illegal labor. It should be emphasized that it is in the power of the respondents, at any time, to lift this injunction.
The respondent’s claim that the enforcement of the “hot goods” law in this case would constitute an unconstitutional taking of property without just compensation, pursuant to the United States Constitution, is without merit. The three factors articulated by the Supreme Court to be considered in determining whether a regulatory scheme goes too far in depriving an owner of their property are: “the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action”. (Kaiser Aetna v United States, 444 US 164, 175 [1979].)
Here, “the economic impact of the regulation” is an outgrowth, not of the diminished value of the apparel, but of the obligation to cure the nonpayment in order to unfreeze these goods for sale. Once the situation is rectified, the goods may be sold. Regarding the “interference with reasonable investment backed expectations”, this statutory scheme was enacted to protect workers and to prohibit the apparel industry from profiting from illegal labor. Therefore, any “reasonably backed *153 expectation” could not and should not expect to profit from the fruits of illegal labor. Finally, the government action here is not to appropriate the goods for public use but rather to enforce a statutory scheme that ensures that cheaper, illegal apparel does not compete with lawfully made goods. Deciding whether a particular government act will be considered a “taking” under the Constitution is to be done on an ad hoc case-by-case basis. In this case the balance weighs heavily in favor of permitting the regulatory enforcement scheme to be carried out.
For these reasons, the motion by the petitioner for a preliminary injunction is granted and cross motion to dismiss is denied.