*854 OPINION OF THE COURT
Bernard F. McCaffrey, J.
The plaintiff and proposed intervenor, Kathy Goldsmith, in a pending matrimonial matter, seeks to intervene in this foreclosure action and consolidate the foreclosure action with her pending matrimonial matter.
The initial issue to be determined is whether a nontitled spouse is a necessary named defendant in a foreclosure action against the marital premises.
It is not disputed that plaintiff in the foreclosure action Arbor National Mortgage, Inc. (Arbor) loaned the sum of $500,000 to Harvey Goldsmith by check paid personally to him and that he has defaulted in his obligations to repay the loan.
RPAPL 1311 sets forth the persons who must be named defendants in a foreclosure action. RPAPL 1311 (1) requires that every person having an estate or interest in possession, or otherwise, in the property as a tenant in fee, for life, by courtesy and for years should be made a party and that every person entitled to the reversion, remainder, or inheritance of the real property should be made a party. The proposed intervenor, Kathy Goldsmith, does not fit within any of these categories. She is not a tenant in the property, whether in fee, for life or for years and she is not claiming any reversionary, remainderman or interest by inheritance in the property.
RPAPL 1311 (2) requires that every person having a right of dower or an inchoate right of dower in the real property be named a party. The right of dower, of course, was abolished as to all estates in real property acquired after August 31, 1930 (Real Property Law § 189). In effect, the plaintiff, Arbor National Mortgage, Inc., contends that Kathy Goldsmith, by virtue of her claim of an interest in the real property superior to that of the plaintiff mortgagee, is attempting to resurrect the right of dower by asking to intervene in this foreclosure action. Thus plaintiff asserts that a spouse with an inchoate right of equitable distribution is not covered by RPAPL 1311 (2).
Proposed intervenor Kathy Goldsmith only has an inchoate right with respect to the house and her rights do not become fixed and matured into a true ownership interest until determined as part of the equitable distribution phase of the matrimonial action; the house has aspects of both marital property and separate property and it is contended that only a *855 portion of the house would be determined to be marital property subject to equitable distribution in the divorce action; and Harvey Goldsmith may be given credit for any amounts contributed by him from his separate property to the acquisition of the house in question.
The court finds that Kathy Goldsmith has only an inchoate right with respect to the Old Westbury house and does not yet have a true ownership interest and thus her inchoate rights are not sufficient to defeat the rights of Arbor in seeking to foreclose its mortgage. It is noted that an issue was presented about the time of the passage of the equitable distribution law as to whether the rights of a spouse in marital property were inchoate rights that somehow vested upon the commencement of a matrimonial action, or at a later date at the time those rights were determined by the divorce court (McDermott v McDermott, 119 AD2d 370 [2d Dept 1986]).
The McDermott case involved, among other issues, the wife’s equitable distribution claim toward the husband’s New York City Fire Department pension, the benefits of which had been earned almost entirely during the marriage. In addressing the issue relating to the wife’s rights in the husband’s pension plan the Appellate Division stated as follows (supra, at 379): "Mrs. McDermott began acquiring an interest in the pension from the moment her husband joined the plan. That interest, unenforceable and unallocated as it may have been prior to the divorce action, constituted the seed from which an inchoate interest in the pension emerged as a marital asset when the divorce action began * * * and matured into a true ownership interest when the equitable distribution judgment terminated the action.”
The court notes that because of the nature of the allegations of fraud raised by the proposed intervenor, Kathy Goldsmith, concerning the allegations of adultery between Harvey Goldsmith and one Anita Kaufman who owns a 50% interest in Arbor National Mortgage, Inc., the plaintiff in this foreclosure action and also a 25% interest in the defendant Harvey Goldsmith’s company, Hart Systems, which company apparently was the beneficiary of the subject mortgage proceedings, it is appropriate to set forth the relevant aspects of both the matrimonial and foreclosure actions.
Defendant and movant were married on June 21, 1983. In January 1984 the above-referenced property was purchased, allegedly with defendant’s separate assets, in his name alone. *856 Less than six years later movant commenced a divorce action (index No. 5638/89). On or about December 28, 1990 movant amended her complaint to include an allegation of adultery due to defendant’s purported relationship with a former family friend, Anita Kaufman.
On May 18, 1990 this court issued a pendente lite order which, inter alla, required defendant to continue paying the carrying charges on the marital residence. A reciprocal restraining order was also entered enjoining each party from encumbering marital assets "unless in the usual course of business and for ordinary living expenses.”
Despite repeated prodding by the court, that action has been persistently delayed due to virtually constant disputes, primarily involving disclosure, culminating the appointment of a Referee to supervise discovery. A June 9, 1992 certification conference is scheduled.
During the interim, because of the enormous financial distress reportedly incurred by defendant’s business, "Hart Systems, Inc.”, on September 6, 1990 defendant executed a $500,000 one-year balloon second mortgage on the marital residence with plaintiff. Anita Kaufman maintains a 50% interest in plaintiff and a 25% interest in Hart Systems, Inc.
More specifically, defendant asserts that at the time he personally owed the business $629,313.77 which he was obligated to repay by September 30, 1990 to avert bankruptcy. The money obtained from plaintiff was immediately paid to Hart Systems.
Movant contends that defendant’s actions constitute a thinly veiled fraud upon she and plaintiff by which her equitable distribution interest in the premises was extinguished. She notes that a reference to the pending divorce action and restraining order was conspicuously absent from defendant’s mortgage application. However, she attempts to impute notice of it to plaintiff through Ms. Kaufman. Ms. Kaufman acknowledges being aware of the divorce action but denies any knowledge of the restraining order. She and defendant each vehemently deny the allegations of adultery and fraud.
For its part, plaintiff argues that it issued a bona fide loan to defendant premised upon an August 29, 1990 $1,275,000 appraisal (an April 28, 1992 updated appraisal was submitted by plaintiff which values the property at $925,000). Significantly, it notes that a title search revealed only an initial *857 $500,000 first mortgage. A notice of pendency was not filed nor was the May 18, 1990 order recorded. Since the deed is solely in defendant’s name, movant is not a necessary party entitled to statutory notice (RPAPL 1311) of the foreclosure action.
Defendant timely paid the $23,000, plus interest, monthly payments on October 6, 1990 through February 6, 1991; however, he defaulted on March 6, 1991. One day later, plaintiff accelerated the entire note. Following foreclosure, the Referee’s report was confirmed on February 27, 1992 and an April 24, 1992 sale scheduled until it was stayed on April 23, 1992 (Ain, J.).
Critically, plaintiff alleges that the first mortgagee commenced a foreclosure action on April 27, 1992 and therefore it merely seeks to preserve its equity by enforcing its judgment. It denied any notice of the May 18, 1990 restraining order and alleges that any fraud by Ms. Kaufman, even if established, was outside the scope of her authority and may not be imputed to it. Indeed, any such fraud likewise endangers its equity which may exceed movant’s.
By letter dated November 22, 1991, the Roosevelt Savings Bank terminated a July 24, 1991 mortgage commitment extended to defendant because of "a material adverse change in credit during the commitment period.” As part of his May 1, 1992 affidavit, defendant avers, apparently for the first time, that he remains willing to convey the premises and place the proceeds, if any, in escrow.
The arduous requirements for the drastic remedy of a preliminary injunctive relief are familiar. They are: (a) a likelihood of success on the merits; (b) irreparable injury absent the granting of such relief; and (c) a balancing of the equities in the applicant’s favor (Grant Co. v Srogi, 52 NY2d 496 [1981]).
The purely circumstantial evidence presented by movant, while compelling, is insufficient without substantiation to establish a predicate for the relief requested.
At the outset, her wholly conclusory allegations of fraud are disputed by all parties and, in the absence of some indicia of proof, are inadequate to create a likelihood of success on the merits. To merely imply fraud is not enough.
Moreover, it has not been demonstrated that movant’s injury will be irreparable. Notably, both mortgages are now in foreclosure and the equity, if any, is apparently limited. Even *858 assuming fraud, her six-year equitable distribution interest might be satisfied from defendant’s interest in Hart Systems, Inc. into which the mortgage proceeds were allegedly funnelled. Alternatively, if insufficient assets remain and fraud is ultimately established, the remedy of contempt is available. Defendant’s cavalier assertion that the imposition of a $500,000 second mortgage upon the marital residence (without informing movant or the court) was "in the ordinary course of business” appears tenuous at best.
Lastly, it can at least be argued that since an injunction would risk the elimination of plaintiffs equity through foreclosure by the initial mortgagee, that the equities weigh in its favor. Fraud is alleged only implicitly against plaintiff and its potential loss, in the absence of fraud, exceeds movant’s.
Accordingly, the application of Kathy Goldsmith to preliminarily enjoin plaintiffs foreclosure sale is denied. Defendant’s obligation to support movant and their infant issue in accordance with the May 18, 1990 order, including but not limited to appropriate housing, is not, however, abated.
Her related applications for intervention and consolidation are likewise denied (RPAPL 1311). Her final request, for a declaration of contempt, is best addressed at the long-awaited trial of the matrimonial action.
Though the court is constrained to find that a nontitled spouse is not a necessary named defendant in a foreclosure action against the marital premises, the court emphasizes two final points. First, the Legislature should seriously consider amending RPAPL 1311 to require spousal notification in order to protect nontitled spouse’s equitable distribution rights in the event of foreclosure. For though statutory notification to the nontitled spouse would not in and by itself be a sufficient basis for a nontitled spouse to stay a foreclosure action of the marital premises by a third-party mortgage holder, nevertheless, certainly at least since the enactment of the Equitable Distribution Law, a spouse, regardless of title, should be entitled at least the same notice as a tenant in possession of a premises sought to be foreclosed. This is particularly so in matrimonial actions where, though not in this instance, the only substantive marital asset is the marital premises and thus a subsequent award for violation of a court order not to encumber, or dispose, or dissipate marital assets, might well be meaningless.
Secondly, and of immediate relevance, it is virtually self- *859 evident that the numerous dilemmas encountered by the parties during this long-standing action could have been avoided by a reasonably prompt trial. Responsibility for the delay and its attendant consequences might be an issue at trial.