OPINION OF THE COURT
David Goldstein, J.
This is a motion for preliminary injunctive relief, enjoining respondents from continuing to retain and from destroying certain property of petitioners, which they claim had been illegally and improperly seized, and for the immediate return of such property, consisting of a truck containing a quantity of fireworks, and further, enjoining respondents from suspending petitioners’ certificate of registration and certificate of fitness.
Petitioner, Bay Fireworks, is a corporation which, for 12 years, has been engaged in the business of dealing, transporting and possessing fireworks, not only in New York, but elsewhere, with sales offices in Georgia, Louisiana, Minnesota and Florida.
On June 19, 1997, petitioner was transporting a truckload of fireworks from Schenevus to Southampton, both in New York State. According to petitioners, the fireworks were to be used in 16 separate fireworks displays, scheduled for June 21 and 28, and July 2, 3, and 4,1997. That evening, as the truck passed through Queens and neared the Nassau County border, it was stopped and detained and the cargo confiscated by law enforcement authorities; the driver was issued a desk appearance ticket, returnable the end of July; and petitioner McGowan was issued a summons, charging a violation of Administrative Code of the City of New York § 27-4254, returnable three months later, in September 1997.
Administrative Code § 27-4254 provides as follows: "§ 27-4254 Violations. Any person transporting explosives, fireworks, flammable liquids, flammable or liquified gases, flammable motion picture film, chlorine, nitrocellulose, organic peroxides and other materials determined to be extremely hazardous by the fire commissioner, without a permit shall be guilty of a misdemeanor punishable by a fine of not less than one thousand dollars and not more than ten thousand dollars or by imprisonment for thirty days or both.”
Subsequently, petitioners received a letter, dated June 20, 1997, which advised that the truck containing fireworks was *398 stopped because it was illegally within New York City without a Fire Department escort, in violation of Administrative Code § 27-4034 (j), which, by its terms, relates only to the transportation of explosives, and which provides as follows: "j. Escort and fee. All vehicles transporting explosives through the city to a destination outside thereof shall be escorted by a department pumping engine, fully manned for fire service. Explosive carriers shall pay a fee of fifty dollars per hour for such escort service.” As a result, respondent Fire Department purported to suspend petitioner’s certificate of registration to conduct firework displays within New York City, as well as its certificate of fitness as a pyrotechnist.
In seeking preliminary and permanent injunctive relief, petitioners allege that the detention and seizure of their property, which was to be used for legitimate fireworks displays, was both illegal and improper in several respects. In actuality, if the facts are as petitioners allege, especially the subsequent meeting which was held, the seizure and detention would amount to a gross misuse of governmental power for questionable purposes, an unconstitutional taking of property without due process, and an infringement upon intrastate trade and interstate commerce.
Petitioners contend that they were transporting "fireworks”, not "explosives”, and that the provisions of the Administrative Code applicable to fireworks do not require a Fire Department escort. Petitioners also argue that the impropriety of the seizure here is evidenced by the fact that, on June 20, 1997, after the taking, at a meeting with representatives of the Queens County District Attorney, the Police and Fire Departments, the Department of the Treasury and the Bureau of Alcohol, Tobacco and Firearms, they were advised that the property would be returned only if they assisted law enforcement authorities in identifying organized crime members who were illegally trafficking in fireworks. If true, such government extortion, for whatever laudable purpose in terms of crime investigation and prevention, may not be condoned. It would be violative of elementary principles of fairness in dealings between government and its citizens.
On this record, it appears that there are clear distinctions in the Administrative Code provisions relating to "explosives” and "fireworks”. Both terms are separately defined in Administrative Code § 27-4002 as follows:
"14. Explosive, explosive compound or mixture, or explosive article, any substance, or compound, or mixture, or article hav *399 ing properties of such a character that alone, or in combination or contiguity with other substances or compounds, it may decompose suddenly and generate sufficient heat, or gas, or pressure to produce rapid flaming combustion, or administer a destructive blow to surrounding objects * * *
"17. Fireworks, any combustible or explosive composition, or any substance or combination of substances, or article, prepared for the purpose of producing a visible or an audible pyrotechnic effect by combustion, explosion, deflagration or detonation.”
The Administrative Code carefully delineates between fireworks and explosives and the applicable rules relating to sale, transportation, storage, use, etc. In doing so, the Code provides applicable rules with respect to explosives in title 27, chapter 4, subchapter 4, which sets forth a regulatory scheme for the "Manufacture, Storage, Sale, Transportation and Use of Explosives”, in contrast to the less stringent rules with respect to fireworks in subchapter 6, which subchapter bears the appellation "Fireworks”. In terms of restrictions on transportation, section 27-4044, which deals with fireworks and which is titled "Storage, sale and transportation”, provides as follows in subdivision (f): "f. Local transportation. It shall be unlawful to carry or transport through the streets, fireworks exceeding in wholesale market value the sum of ten dollars, unless they are securely packed in spark-proof wooden or metal packages having plainly marked on the outside thereof in large legible letters the words, 'FIREWORKS — EXPLOSIVE,’ but under no circumstance shall any person carry or transport fireworks in a tunnel or subway under the streets, lands or waters of the city, to which the public has access.” In contrast are the more restrictive provisions which control with respect to explosives in Administrative Code § 27-4034 (j), which, inter alia, requires that there be an escort by a Fire Department pumping engine, fully manned for fire service. Plainly, this is far more stringent than the packaging requirements for fireworks, the principal restriction on the movement and transport of fireworks under subchapter 6.
In opposition, respondents, through the Corporation Counsel, claim that, notwithstanding the provisions of the Administrative Code, the Fire Department rules (in particular, 3 RCNY 40-07 [e] [1]) require a fully manned Fire Department escort and include fireworks within the term explosives, except when such are transported pursuant to Administrative Code § 27-4044 (f), for a display for which a Fire Department permit has been issued.
*400 Contrary to the argument, however, to the extent there is any inconsistency between the Administrative Code and the rules of the Fire Department, the former takes precedence. The Administrative Code, enacted as it is by the City Council, the City’s legislative body, cannot be overridden or contravened by executive rules of any City agency, body or department. The Fire Department rules, as far as appears, classify fireworks in the same category as explosives in terms of storage and/or transportation. To the extent they impose a greater or inconsistent requirement than that directed by the Administrative Code, they are invalid. Although section 489 of the New York City Charter authorizes the Fire Commissioner to make and enforce rules for the transportation of "combustibles * * * explosives * * * or other dangerous substances,” it does not foster the adoption of rules which are inconsistent with legislation promulgated by the City Council. It is a fundamental principle that the executive branch may not, by rule or regulation, displace legislation duly enacted by a legislative body, and this is so whether the rule or regulation is advanced or otherwise supported by executive policy or directive.
Moreover, the exception contained within 3 RCNY 40-07 (e) (1) further reflects the impropriety of the Fire Department rule relating to mandatory escorts, since its operative effect is well beyond the bounds of permissible municipal authority. On its face, 3 RCNY 40-07 (e) (1) requires a fully manned Fire Department escort for any shipment of fireworks, except when such is transported pursuant to Administrative Code § 27-4044 (f), for a display for which a Fire Department permit has been issued. Since no permit will ever be issued by the City for a display outside the City, the end result is to require an escort for any transport which passes through a portion of the City, no matter how short the distance, on its way to a display elsewhere in the State, or to another State. Taking into account that the use of an escort results in the imposition of an hourly fee, the effect is to charge for passing through the City. The impingement and potential chilling effect upon both intrastate and interstate commerce are obvious.
Aside from the foregoing, no rational basis is shown for the distinction in the Fire Department rule mandating an escort, except when the party possesses a display permit. The existence of a permit for display purposes hardly equates with the safety considerations allegedly at issue in terms of the use of an escort.
In my view, there is no merit to the City’s position that the Fire Department rule is merely a reasonable extension of the *401 Administrative Code provisions relating to fireworks and explosives. To the contrary, it is improper legislation which, insofar as it requires an escort for most shipments of fireworks, is in direct conflict with the Administrative Code, which contains no such requirement. It extends far beyond the packaging, handling and transporting provisions contained within Administrative Code § 27-4044 (f). Nor is there any claim here that the fireworks at issue in this case were not properly packaged and marked as required by the Administrative Code. While the City, to some extent, relies upon the fact that, at the time of the stop, the van was marked with a sign which read, "Explosives 1.3G”, at oral argument it was conceded that the designations "UN0335” and "1.3G” are classifications for fireworks, not necessarily for explosives.
Similarly without merit is respondents’ suggestion that commercial fireworks should be considered explosives, since they are capable of generating heat, gas or pressure to produce combustion or possibly cause damage to surrounding objects, within the definition of "explosive” in Administrative Code § 27-4002 (14). However, had the drafters of the Administrative Code intended to distinguish between commercial and noncommercial fireworks, it would have been an easy matter to so provide. As far as appears, the legislative drafters chose not to do so and, whatever public benefit may be obtained, in my view, the promulgation of the Fire Department rule was an improper usurpation of legislative authority and prerogative.
Plainly, there are laudable purposes to be served by the adoption of a rule relating to the use of a Fire Department escort in transporting fireworks, especially in relation to considerations of public safety and welfare. The issue, which is a matter of legislative discretion, may warrant the immediate attention of the City Council. Nevertheless, in view of the clear inconsistency between the existing rule and the Administrative Code, the latter requiring an escort only for shipments of explosives, not fireworks, the adoption of such a rule by the Fire Commissioner exceeded the bounds of his authority. Inasmuch as the Administrative Code carefully delineates between explosives and fireworks insofar as the necessity of an escort, it cannot be concluded that the omission was a mere oversight. In any event, this was a matter for the legislative branch, not the executive in the proper exercise of its legitimate powers.
In order to obtain preliminary injunctive relief, the petitioner has the burden of demonstrating (1) a likelihood of success on the merits, (2) irreparable injury if provisional relief is with *402 held, and (3) a balance of the equities in favor of the movant. (Aetna Ins. Co. v Capasso, 75 NY2d 860; Grant Co. v Srogi, 52 NY2d 496; Chrysler Corp. v Fedders Corp., 63 AD2d 567; Albini v Solork Assocs., 37 AD2d 835.)
Insofar as applicable here, petitioners have demonstrated a clear right to relief. It is the determination of this court that the Fire Department rule, RCNY 40-07 (e) (1), insofar as it mandates Fire Department escorts for the transportation of fireworks within the City, is invalid. It is in excess of the lawful authority of the Department and the Commissioner and, for the reasons discussed, is constitutionally infirm. Under the circumstances, it is irrelevant that, in the past, petitioners had applied for an escort in connection with prior shipments. The failure to assert rights, especially those of constitutional dimension, is without preclusive effect. Plainly, irreparable injury will result should injunctive relief be withheld, both in terms of the deprivation of property rights and the damage to petitioners’ business. Under the circumstances, it is crystal clear that, under the present structure of the municipal provisions, there is a balance of the equities in favor of petitioners.
In reaching this conclusion, the court has not considered the factual considerations and charges in relation to the alleged meeting with law enforcement officials on June 20, 1997. Petitioners have charged that, at that meeting, it was suggested that a release of the property could be obtained by the disclosure of those in organized crime who were involved in the illegal traffic of fireworks. The opposing papers do not deal with the issue. Nor did any of the attorneys who appeared on oral argument, namely, the Corporation Counsel, counsel to the Fire Department and the Queens County District Attorney, answer or otherwise address the issue, although they had a full opportunity to do so.
Accordingly, upon the foregoing, petitioners’ motion for preliminary injunctive relief is granted to the extent that, except as provided herein, respondents shall be enjoined and restrained from continuing to retain and from destroying or otherwise interfering with petitioners’ right to possession and to a return of their property, consisting of the truck and the fireworks, which, except to the extent provided, shall be returned to petitioners forthwith. Since the court has determined, as a matter of law, that Fire Department rule 3 RCNY 40-07 (e) (1), which requires the use of an escort for the transport of fireworks within the City, is invalid, petitioners are entitled to relief directing the immediate return of their property, which has been unlawfully seized and detained.
*403 Inasmuch as the desk appearance ticket is not before the court, and neither the driver nor the District Attorney are parties to this action, the issues in the criminal proceeding have not been considered. As far as appears, at issue there is a charge of reckless endangerment, which may or may not concern the legal issues addressed in this action. To accommodate the rights and interests of the parties, and to avoid any interference with the prosecution of the criminal proceeding, respondents, if so advised, may retain custody of one of each type of fireworks which had been seized and detained, a restriction sufficient to accommodate the competing interests, namely, petitioners’ right to a return of their property and the right, duty and/or obligation of the District Attorney to continue with the prosecution of the criminal proceeding.
Finally, in view of the determination reached that the seizure and detention, pursuant to the Fire Department rule, was improper, respondents shall be enjoined and restrained from proceeding further with any action in terms of any suspension of either the certificate of registration or the certificate of fitness.