OPINION OF THE COURT
Helen E. Freedman, J.
Plaintiffs’ motion, in this shareholder derivative action, for an order granting renewal and reargument of their prior motion for a preliminary injunction, which was denied by order of this court dated January 6, 2000 (the Prior Order), and for other relief, is granted, and upon reargument, this court adheres to the Prior Order and otherwise denies this motion, except to the extent set forth below.
In the Prior Order, the court denied plaintiffs’ application for an order enjoining defendants Bruce Keyes (Keyes), Susan Keyes and Frank Marcigliano from (1) using the funds and as *638 sets of defendant Marine Risks, Inc. (Marine Risks) to pay legal fees and expenses associated with Keyes’ defense of his ongoing criminal action, license revocation or related proceedings by New York’s State Insurance Department, and (2) enforcing a corporate resolution allegedly adopted at a meeting held on November 10, 1998 and approved by the Board of Directors and a majority of Marine Risks’ shareholders on December 29, 1998. The court found that plaintiffs failed to satisfy any of the three prongs of the preliminary injunction test: likelihood of success on the merits, risk of irreparable harm absent the injunction, and favorable equities. (See, Grant Co. v Srogi, 52 NY2d 496, 517 [1981].)
Since the court issued the Prior Order, there have been three significant developments. First, by letter dated March 6, 2000, Keyes informed the court through his attorney that he agreed to pay any further criminal defense expenses from his own assets. Second, on March 7, 2000, Keyes was convicted of grand larceny and scheming to defraud in the first degree, and acquitted of other charges against him. Finally, by affirmation dated March 23, 2000, defendants Keyes, Marine Risks and Susan Keyes admitted they had erred in a previous court submission when they claimed that, when Pilipiak testified before the New York County Grand Jury investigating Keyes’ case, he was immune from prosecution. This is significant, because, based on the evidence before it, while addressing the equities in the Prior Order, the court stated: “Keyes’ criminal defense attorneys have represented to this Court that Pilipiak was a major participant in at least some several [sic] of the allegedly criminal acts, and has cooperated with the District Attorneys’s [sic] office upon the representation that he would not be prosecuted.” The defendants stated in their March 23 affirmation that, during Keyes’ trial, Pilipiak testified that he had waived immunity before testifying before the Grand Jury, but that the District Attorney’s office had told Pilipiak that it did not intend to prosecute him.
Reargument/Renewal
The threshold issue is whether this motion for reargument and renewal is now moot because Keyes has agreed to personally pay his criminal defense costs from March 6, 2000 onwards. Clearly, this motion has not been mooted. Plaintiffs attack the validity of any expenditures by Marine Risks on Keyes’ behalf, which include the considerable sums (at least $250,000) that Marine Risks already spent before March 6 on *639 Keyes’ criminal defense, as well as any future insurance proceedings and civil actions. Accordingly, the merits of plaintiffs’ claims here must be addressed.
Plaintiffs claim that the Prior Order contains a number of mistaken rulings. First, plaintiffs claim that the court erred by holding that the shareholder vote on December 29, 1998 authorized Keyes to use Marine Risks’ funds for his legal defense. Second, plaintiffs argue that the court was mistaken in ruling that the shareholders had found, pursuant to Business Corporation Law § 722, that Keyes’ conduct met the standard required for indemnification. Third, they want the court to retract its aforementioned findings with respect to Pilipiak’s complicity in the criminal acts. Fourth, they contend that the court should not accept Keyes’ undertaking, dated December 21, 1999 (the Undertaking), because it does not comply with CPLR undertaking requirements. Finally, they contend that the Court’s holding in Donovan v Rothman (253 AD2d 627 [1st Dept 1998]) applies to this case and mandates the issuance of a preliminary injunction. As discussed below, all but the third contention lack any merit.
The Shareholders’ Vote
Plaintiffs contend that the court mistakenly ruled that the December 29, 1998 shareholder vote (carried by Keyes, as majority shareholder) authorized Keyes to use Marine Risks’ funds to pay his personal legal expenses. Plaintiffs take issue with the statement in the Prior Order (at 3-4) that the December 29 Board of Directors’ meeting occurred before the shareholders’ meeting, when actually the shareholders’ meeting took place at 10:00 a.m., before the new Board of Directors’ meeting at 11:35 a.m. Plaintiffs did not specifically raise the timing of the two meetings in Pilipiak’s first affidavit dated November 10, 1999, and in his supplemental affidavit dated December 22, 1999, but they now contend that the sequence of the two meetings is legally significant.
In truth, it makes no difference which meeting occurred first. It is irrelevant when or whether Marine Risks’ Board of Directors validly approved Keyes’ indemnification, because, pursuant to Business Corporation Law § 723 (b) (2) (B), the shareholders’ vote alone validated Marine Risks’ payments to Keyes. At the December 29 meeting, the shareholders also ratified the invalid board resolutions authorizing payment, from the board meeting on November 10, 1998. (See, Prior Order, at 2-3.) Accordingly, Keyes’ indemnification was duly authorized.
*640 The Shareholders’ “Good-Faith” Finding
Plaintiffs next claim that the court erred in finding that, on December 29, the shareholders had made the requisite finding under Business Corporation Law § 723 (b) (2) (B) that Keyes met the standard of conduct required by Business Corporation Law § 722, i.e., good faith and concern for the best interests of the company. On January 25, 1999, Keyes circulated a “draft” of the shareholders’ meeting minutes, with a cover letter indicating that the Board of Directors had approved the minutes. The “draft” minutes state that “A resolution was put before the shareholders that since [Marine Risks] President, Bruce Keyes, at all times acted in good faith and in the best interests of the corporation, that he be fully indemnified by the corporation for any criminal action and/or subsequent civil, action that may result from said indictment.” After Keyes circulated the minutes draft, Pilipiak objected to them by letter to Keyes dated February 4, 1999, on the ground, inter alia, that neither the November 10, 1998 board resolution, nor the notice of the December 29 shareholders’ meeting, contained the quoted language. Plaintiffs contend that Keyes wrote it after the December 29 shareholders’ meeting, and that the shareholders never voted on it at the meeting. Plaintiffs contend that, because defendants did not deny the accusations in the letter or in Pilipiak’s affidavit dated November 10, 1999, which repeats the accusations, the evidence is “undisputed” and proves plaintiffs’ points. »
Even if Keyes wrote the quoted language after the shareholders’ meeting, however, the statutory requirement under Business Corporation Law § 723 (b) (2) (B) was met. Keyes owns 59% of Marine Risks’ shares, and his vote alone was sufficient to approve Marine Risks’ indemnification. As discussed in the Prior Order (at 4), Keyes’ personal interest in his indemnification did not preclude him from voting on the issue. Nor did Keyes’ personal interest preclude him from making the requisite finding of his good faith. Presumably Keyes made such a finding of his good faith at the December 29 board meeting, and he also stated it in the Undertaking. Under the circumstances, that was sufficient compliance with Business Corporation Law § 723 (b) (2) (B). Holding otherwise would place form over substance, since Keyes could simply call another shareholders’ meeting and put the issue to another vote, which he would win by virtue of his majority ownership.
*641 Defense Attorneys’ Affidavit
Plaintiffs object to this court’s reliance on representations by Keyes’ criminal defense attorney that Pilipiak participated in the criminal acts, and was granted immunity from prosecution in exchange for his Grand Jury testimony. They also request a hearing to test the basis of certain statements in the criminal defense attorney’s affirmation. Pilipiak has submitted an affidavit, in which he denies any participation in criminal activities at Marine Risks, and states that he waived immunity before testifying before the Grand Jury. Defendants concede that they were mistaken, insofar as they now admit that Pilipiak had waived immunity.
In considering the equities in the Prior Order, the court relied on the defense attorney’s sworn statements as to the criminal matter, of which he claimed to have personal knowledge. The attorney’s statements that Pilipiak cooperated with the District Attorney’s office and that he was immune from prosecution are supported by a letter from an investigator to the District Attorney’s office dated July 8, 1998. The letter states that the investigator met with plaintiffs and their attorney, who claimed that Keyes was misappropriating clients’ premium returns for his own personal gain. The letter then states that plaintiffs sought full immunity from prosecution or other penalties in exchange for their cooperation with all Federal, State or other authorities. The investigator’s letter provided a good-faith basis for the claim by Keyes’ defense attorney that Pilipiak had been granted immunity, and accordingly no hearing is warranted.
In the Prior Order, the court did not mean to suggest that Pilipiak was guilty of any crimes, but only to indicate that Pilipiak was a high-level executive of Marine Risks, that Keyes’ misdeeds were at least partly connected with Marine Risks’ business and in the company’s interests, that Keyes contended that he did not act alone, and that accordingly plaintiffs had not shown that the equities clearly weighed in their favor. Although Keyes’ conviction may bear upon the ultimate outcome of this case, plaintiffs have not shown that Keyes’ actions were not taken in the best interests of the corporation. Marine Risks’ indemnification of Keyes indirectly benefits the company, because Keyes’ conviction may expose the company to license revocation or other sanctions. Finally, plaintiffs waited nearly one year after the December 29, 1998 shareholders’ vote before filing their preliminary injunction motion on the eve of Keyes’ trial, apparently for tactical reasons. At present, the balance of equities has not shifted decisively in plaintiffs’ favor.
*642 However, the decision should be amended to remove defendants’ erroneous assertions. The court shall direct the clerk to delete the third full paragraph from page 7 of the Prior Order.
Keyes’ Undertaking
Plaintiffs claim that Marine Risks’ indemnification of Keyes’ expenses is unlawful, on the ground that the Undertaking Keyes delivered to Marine Risks pursuant to Business Corporation Law § 723 (c) is invalid, because the Undertaking does not comply with CPLR 2501 through 2513, particularly (1) CPLR 2502 (a) (2)’s requirement that an undertaking’s surety, if a natural person, shall execute an affidavit with the undertaking stating the surety’s ability to pay, unless the court orders otherwise, and (2) CPLR 2503 (a)’s requirement that a natural person’s undertaking in an amount of more than $1,000 shall be secured by real property located in New York State, unless the court orders otherwise. Here, Keyes’ Undertaking is unsecured, he did not execute an affidavit with the undertaking, and the court has not ordered that Keyes does not have to secure the Undertaking or execute an affidavit.* In opposition, defendants argue that the Undertaking is valid under the Business Corporation Law, and that the CPLR provisions are inapplicable to the Undertaking.
It is undisputed that Keyes executed and delivered his Undertaking pursuant to Business Corporation Law § 723 (c), which provides that “Expenses incurred in defending a civil action or criminal action or proceeding may be paid by the corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of [a] director or officer to repay such amount as, and to the extent, [said director or officer is ultimately found not entitled to indemnification].” Plaintiffs claim the CPLR applies to undertakings made pursuant to the Business Corporation Law, but offer no legal support for their claim. No cases directly address this point.
The provisions of CPLR article 25 do not apply to the Undertaking because an “undertaking” made under the Busi *643 ness Corporation Law is distinct from an “undertaking” made under the CPLR. Undertakings made under the two statutes differ in numerous ways. CPLR undertakings are furnished by parties seeking relief in connection with ongoing civil judicial proceedings (see, CPLR 101), such as preliminary injunctions (see, CPLR 6312 [b]), attachments (see, CPLR 6212 [b]), or receiverships (see, CPLR 6403). CPLR undertakings are ineffective until they are filed with the clerk of the court and served on the opposing parties (see, CPLR 2505), and they must be acknowledged in the form required for a recorded instrument (see, CPLR 2502 [d]). Finally, pursuant to CPLR 2501, a principal filing a CPLR undertaking cannot act as his or her own surety. (See, Alex v Grande, 29 AD2d 616 [3d Dept 1967]; see also, Centurifico Delveneto [USA] v Switzerland Gen. Ins. Co., 180 AD2d 547 [1st Dept 1992] [holding that, under CPLR 2501, the proposed surety was unacceptable where its assets were “inextricably entwined” with the principal’s].)
Conversely, a Business Corporation Law undertaking is a repayment commitment by a director or officer to its corporation, delivered in exchange for the corporation’s indemnification of the director’s or officer’s ongoing expenses for defending “a civil or criminal action or proceeding” (Business Corporation Law § 723 [c] [emphasis supplied]), even if such action or proceeding is merely threatened (see, Business Corporation Law § 722 [a]). (Here, Keyes delivered the Undertaking in connection with his criminal prosecution, thus placing the Undertaking outside the scope of the CPLR.) A Business Corporation Law undertaking is enforceable against its principal upon delivery, and does not need to be filed, served on other parties or acknowledged. Moreover, the Business Corporation Law explicitly provides that the undertaking can be made “by or on behalf of’ the indemnified director or officer (Business Corporation Law § 723 [c] [emphasis supplied]); in other words, a principal making an undertaking under the Business Corporation Law can act as his or her own surety. In this case, Keyes is acting as his own surety, which complies with the Business Corporation Law.
In summary, the Undertaking is governed by the Business Corporation Law, and undisputedly is in compliance with that statute. However, the Undertaking is not an “undertaking” within the meaning of the CPLR, and accordingly the CPLR’s provisions are inapplicable to it.

*644
Donovan v Rothman

Plaintiffs argue that the holding in Donovan v Rothman (253 AD2d 627 [1st Dept 1998], supra) requires this court to issue a preliminary injunction. In Donovan, the Appellate Division, First Department, enjoined the individual defendants from expending corporate funds for their defense in a civil action. Plaintiffs claim that the Court in Donovan held that the three-pronged test that the courts normally use for applications for preliminary injunctions {see, Grant Co. v Srogi, 52 NY2d 496, 517, supra) does not apply where a party seeks a preliminary injunction to prevent the unauthorized expenditure of corporate funds, and that the court should only consider the equities here.
Plaintiffs’ reliance on Donovan (supra) is misplaced for two reasons. First, the Court in Donovan never held that the three-pronged test is inapplicable, but merely stated that, even if the three-pronged test were applied to the facts of the case, an injunction should issue. (Donovan v Rothman, 253 AD2d, at 629-630.) Here, plaintiffs have failed to prove entitlement to an injunction under either a three-pronged test or the equity-based analysis that plaintiffs urge this court to apply.
Second, Donovan (supra) is distinguishable on its facts. In Donovan, the corporation’s indemnification of the individual defendants’ expenses was unauthorized. (Supra, 253 AD2d, at 629.) This is not the case here, where the Marine Risks’ shareholders authorized Keyes’ indemnification pursuant to the Business Corporation Law. Accordingly, plaintiffs’ reliance upon Donovan is unavailing.
Corporate Accounting
Finally, plaintiffs seek an immediate accounting of Marine Risks. This application is denied. It was not part of the relief requested on the prior motion, and plaintiffs have made no showing of entitlement to the relief.
Conclusion
Accordingly, it is ordered that the motion for reargument and renewal is granted, and upon reargument and renewal, the court directs the clerk to amend the decision and order of the court dated January 6, 2000 by deleting the third full paragraph from page 7 of the Prior Order, and it is further ordered that the court adheres to the Prior Order in all other respects, and it is further ordered that the motion for an immediate accounting of defendant Marine Risks, Inc. is denied.

 The court notes that, assuming arguendo that the CPLR applied to the Undertaking, the court would require that Keyes secure the Undertaking with real property and file an affidavit, and decline to order otherwise, because Keyes has not disclosed his personal assets, and has not assured the court that Keyes cari repay Marine Risks if he ultimately loses his criminal case. However, that issue is moot: as shown infra, the CPLR does not apply to the Undertaking.