■ CEDAR GRAPHICS, INC., Respondent, v LONG ISLAND POWER AUTHORITY, Appellant, et al., Defendants. [826 NYS2d 396]—

In an action, inter alia, for a judgment declaring that the plaintiff is in compliance with a "Manufacturing Competitiveness Program" administered by the defendant Long Island Power Authority, the defendant Long Island Power Authority appeals, as limited by its brief, from so much of an order of the Supreme Court, Suffolk County (Whelan, J.), dated August 22, 2005, as granted the plaintiff's motion for a preliminary injunction restraining it from disconnecting or interfering with the plaintiff's electric service, and which denied its cross motion for

summary judgment dismissing the complaint insofar as asserted against it.

Ordered that the order is affirmed insofar as appealed from, with costs.

The plaintiff entered into an agreement in 1996 with the Long Island Lighting Company (hereinafter LILCO) pursuant to which the plaintiff would be permitted to take advantage of reduced electricity rates by participating in the industrial effectiveness project established by the defendant Empire State Development Corp. (hereinafter ESDC). Pursuant to the agreement, the plaintiff's entitlement to the reduced rate was required to be certified by ESDC. LILCO retained the right to terminate the plaintiff's participation in the program if the plaintiff made false representations in its application to participate. The agreement further provided that in the event of termination, the plaintiff would be required to refund any savings it had achieved as a result of the program.

The defendant Long Island Power Authority (hereinafter LIPA) assumed LILCO's obligations under the agreement (see Public Authorities Law § 1020 et seq.). By letter dated March 16, 2004, Bruce Germano, LIPA's vice-president for retail services, advised the plaintiff that LIPA had learned that the plaintiff had not complied with its agreement with ESDC and that LIPA intended, if the plaintiff could not establish its compliance with that agreement, to terminate the plaintiff's participation in the program. The plaintiff did not respond to that correspondence and, by letter dated April 1, 2004, Germano advised the plaintiff that it would be charged the sum of $376,955, which is the amount that LIPA had determined the plaintiff saved by virtue of its participation in the program. By letter dated April 15, 2004, the plaintiff's attorney wrote to Germano demanding that LIPA provide the documentation on which its determination was based. LIPA did not respond to the letter and, on April 28, 2004, billed the plaintiff in the amount of $376,955.

The plaintiff commenced this action for declaratory and injunctive relief. When the plaintiff moved for a preliminary injunction, LIPA cross-moved to dismiss the complaint insofar as asserted against it, asserting that the courts are without jurisdiction to entertain a challenge to its billing determinations unless the customer first exhausts available administrative remedies by submitting to LIPA's dispute resolution procedures. The Supreme Court denied LIPA's cross motion and granted the requested injunction. LIPA appeals.

"To be entitled to a preliminary injunction, the movant must establish (1) a likelihood of success on the merits, (2) irrepar-

able injury absent granting the preliminary injunction, and (3) a balancing of the equities in the movant's favor" (*Ruiz v Meloney*, 26 AD3d 485, 485-486 [2006]; *see W.T. Grant Co. v Srogi*, 52 NY2d 496, 517 [1981]; *Ying Fung Moy v Hohi Umeki*, 10 AD3d 604 [2004]; *Hightower v Reid*, 5 AD3d 440 [2004]). The determination to grant or deny such relief is within the discretion of the court (*see Doe v Axelrod*, 73 NY2d 748, 750 [1988]).

We reject the contentions of LIPA that the plaintiff would not suffer irreparable injury from the termination of its electrical service and that the balancing of the equities is not in the plaintiff's favor.

LIPA further argues that the plaintiff's failure to seek relief through LIPA's dispute resolution procedures bars the court from considering the plaintiff's claims, thus precluding any showing by the plaintiff of a likelihood of success on the merits. LIPA's dispute resolution procedures are set forth in the tariff that establishes the terms of the customer's agreement to pay for electrical service. The tariff provides that "[i]f a customer has a complaint about bills . . . the Customer shall first make a complaint to the Authority's Manager." Only the initial complaint is mandatory; the customer is entitled to appeal to the chairman, but the tariff does not require that the customer exercise that right.

On the limited record available at this stage in the proceedings, it appears that the plaintiff satisfied the initial complaint requirement through counsel's letter to Germano. Moreover, based on the record here, the plaintiff's remaining submissions demonstrated the likelihood of its success on the merits by casting serious doubt on LIPA's entitlement to recover the charges it has imposed.

LIPA asserted two bases for terminating the plaintiff's electrical service—lack of compliance with ESDC's requirements and misrepresentation in the initial application. The record, however, is bereft of evidence of either. The condition of the plaintiff's participation in the program was that the plaintiff's eligibility be certified by ESDC. Presumably the plaintiff's eligibility was initially certified, since it was participating in the program for seven years before LIPA sought to terminate that participation. Despite this, LIPA came forward with nothing to establish that the plaintiff's eligibility to participate has been decertified by ESDC. The only evidence in the record that ESDC made any determination whatsoever in this regard is a letter by ESDC to the plaintiff, submitted in LIPA's reply papers, demanding that the plaintiff repay sums paid by ESDC pursu-

ant to its agreement with the plaintiff. The letter does not, in itself, constitute a decertification that would support LIPA's assertions. Moreover, to the extent that LIPA's argument rests on misrepresentations made in the initial application for participation in the program, it is belied by a review of the application, which reflects that there were no relevant misrepresentations in the application. On these facts, therefore, as presented at this stage in the litigation, the Supreme Court correctly concluded that the plaintiff established a likelihood of success on the merits.

In light of this determination, we need not address whether the requirement that a party challenging a LIPA billing determination use the dispute resolution procedure arises as a result of LIPA's status as a governmental agency or is simply a contractual condition precedent to suit established by the applicable tariff. Krausman, J.P., Rivera, Spolzino and Lifson, JJ., concur.